**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGOIRE TOURNANT,<br><br>Defendant. | No. 22 Cr. 276 (LTS)<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GREGOIRE TOURNANT'S MOTION TO COMPEL THE GOVERNMENT TO PRODUCE *BRADY* MATERIAL IN THE SEC'S FILES, OR, IN THE ALTERNATIVE, FOR A HEARING**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .......................................................................................................................... 2

    A.   The Joint Investigation............................................................................................... 2

    B.   The USAO and SEC Publicly Acknowledge their Partnership ......................................... 4

    C.   Overlapping Cases .................................................................................................... 6

    D.   USAO Refuses to Search the Files of the SEC for *Brady* Material................................... 6

ARGUMENT.................................................................................................................................. 7

    I.   The Government Violated the Court's Rule 5(f) Order in Refusing to Search the SEC's Files for *Brady* Material................................................................................. 7

    II.   The USAO Violated *Brady* in Refusing to Search the SEC's Files ................................. 10

    III.   Alternatively, the Court Should Order an Evidentiary Hearing ....................................... 13

CONCLUSION............................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

Page(s)

*Brady v. Maryland*,
  373 U.S. 83 (1963) ............................................................................................... passim

*Gov't of the V.I. v. Martinez*,
  780 F.2d 302 (3d Cir. 1986) ......................................................................................... 14

*Kyles v. Whitley*,
  514 U.S. 419 (1995) ............................................................................................... 10, 12

*United States v. Alexander*,
  748 F.2d 185 (4th Cir. 1984) ......................................................................................... 14

*United States v. Barcelo*,
  628 F. App'x 36 (2d Cir. 2015) .................................................................................. 11–12

*United States v. Bases*,
  549 F. Supp. 3d 822 (N.D. Ill. 2021) ........................................................................ 11–13

*United States v. Blaszczak*,
  308 F. Supp. 3d 736 (S.D.N.Y. 2018) ....................................................................... 10–11

*United States v. Connolly*,
  2017 WL 945934 (S.D.N.Y. Mar. 2, 2017) ................................................................. 10, 12

*United States v. Gupta*,
  848 F. Supp. 2d 491 ................................................................................................ 10–12

*United States v. Hunter*,
  32 F.4th 22 (2d Cir. 2022) ............................................................................................. 10

*United States v. Mahaffy*,
  693 F.3d 113 (2d Cir. 2012) .......................................................................................... 12

*United States v. Martoma*,
  990 F. Supp. 2d 458 (S.D.N.Y. 2014) ........................................................................... 11

*United States v. Middendorf*,
  2018 WL 3956494 (S.D.N.Y. Aug. 17, 2018) ...................................................... 11–12, 14

*United States v. Rodriguez*,
  496 F.3d 221 (2d Cir. 2007) .......................................................................................... 13

*United States v. Triumph Capital Grp., Inc.*,
    544 F.3d 149 (2d Cir. 2008) .................................................................................................... 10

**Rules**

Federal Rule of Criminal Procedure 6(d) ..................................................................................... 12

Federal Rule of Criminal Procedure Rule 5(f) ..................................................................... passim

Mr. Tournant respectfully submits this motion to compel the United States Attorney's Office for the Southern District of New York (the "USAO") to search the files of its investigative partner, the Securities and Exchange Commission (the "SEC"), for any exculpatory evidence pursuant to this Court's Federal Rule of Criminal Procedure Rule 5(f) Order (the "Rule 5(f) Order") and the USAO's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) ("*Brady*").

## PRELIMINARY STATEMENT

The Government violated the Court's Rule 5(f) Order and its *Brady* obligations by refusing to search the files of its investigative partner, the SEC, or to produce any exculpatory material in the SEC's possession. The joint nature of the USAO's and SEC's investigation is clear. Among other things, the USAO and SEC jointly interviewed all the witnesses for whom the USAO has produced interview reports; the SEC shared materials with the USAO, including its work product; and the USAO relied on the shared materials in applications filed with the Court in the criminal case. In addition, the USAO and SEC held a joint press conference in which the USAO publicly credited the SEC's involvement in running the investigation with the USAO and its agents, and the SEC touted its "partnership" with the USAO. Given these and other statements, as well as the facts demonstrating their investigative partnership, the USAO should not be permitted to reverse course now and take a different position when it is strategically convenient and at the expense of Mr. Tournant's constitutional rights. The Court should therefore grant Mr. Tournant's motion pursuant to the Rule 5(f) Order and *Brady*.

*First*, the Government's conduct violates the Court's Rule 5(f) Order. Under this Order, the Government has the "affirmative duty" to "seek out and provide to the defense all material evidence that is favorable to [Mr. Tournant] and that is known to **the Government,**" which is defined to include "federal state, and local law enforcement officers and ***other officials who have***

***participated in the investigation and prosecution of the offense or offenses with which the defendant is charged***." (ECF. No. 13, at 1 (emphasis added).) The SEC clearly meets the "participation" standard because it jointly gathered the facts of this case with the USAO, including, *inter alia*, participating in all witness proffers, sharing information and work product to help the USAO obtain a warrant, and coordinating charges and court filings with the USAO.

*Second*, the USAO's *Brady* obligations include the affirmative duty to search for and produce any exculpatory information in the possession of the "prosecution team," including any other government agencies with whom it has engaged in joint fact gathering. Again, based on the same coordination between the USAO and SEC that resulted in the SEC falling within the scope of the Rule 5(f) Order, the Court should conclude that the USAO's *Brady* obligations require it to determine if the SEC is in possession of any exculpatory information and, if so, to produce it to Mr. Tournant. In refusing to do so, the USAO violated its *Brady* obligations to Mr. Tournant.

## BACKGROUND

### A. The Joint Investigation

Even without the benefit of full discovery into the issues raised in this motion, the evidence reflects that the USAO and the SEC (collectively, the "Government") conducted a joint investigation into the alleged scheme that has led to the instant proceedings against Mr. Tournant. The evidence reflects that the USAO and the SEC, among other things, jointly shared investigatory materials, conducted joint witness interviews, and repeatedly communicated as the investigation progressed.

For example, the USAO's document production to Mr. Tournant in this case contains millions of pages of documents that were previously produced to the SEC. (Declaration of Seth L. Levine, dated Dec. 23, 2022 ("Levine Decl."), Ex. A.) The Government also has turned over

information regarding a total of 22 witness proffers that it conducted during the course of its investigations. Both the USAO and SEC were present at all 22 of those proffers. The SEC was also present for at least four of the numerous presentations made to the Government by Allianz and its counsel, and the SEC was present on four of seven calls of which Mr. Tournant is currently aware between the Government and Allianz's counsel.

Other materials produced in discovery further confirm that the USAO and SEC worked in lockstep throughout the investigation. For example, SEC lawyers shared information and work product with the USAO, which the USAO then used in applications to the Court in the criminal case. Specifically, the affidavits accompanying the USAO's Applications for Warrant and Order for Cellphone Location and Pen Register Information are replete with information provided by the SEC to the USAO to establish probable cause. (*See, e.g.*, Levine Decl., Ex. B at 45338 (noting that the affidavit is based on documents that Allianz produced to the SEC); Ex. C at 45370 (affirming that the information in the affidavit is based in part on documents and information collected by the [SEC]").)

Further, Allianz's settlement agreements with the SEC and the USAO are interrelated and make clear that they were negotiated in coordination. For instance, Allianz's settlement agreement with the SEC credits Allianz for any funds that it pays pursuant to the USAO settlement agreement. (*See* Levine Decl., Ex. D at 9 ("AGI US shall pay to the Commission disgorgement of $315.2 million plus prejudgment interest of $34.0 million for a total of $349.2 million, which shall be deemed satisfied by forfeiture and restitution ordered pursuant to the settlement of parallel criminal charges by the United States Department of Justice in *United States v. Allianz Global Investors U.S. LLC* (S.D.N.Y.).").

Additionally, the SEC Consent Judgments of Messrs. Bond-Nelson and Taylor, kept under seal until May 17, 2022 (*see United States v. Bond-Nelson*, 22 Cr. 137 (PAE), ECF Nos. 2 (sealing order), 9 (order unsealing docket on May 17, 2022); *United States v. Taylor*, No. 22 Cr. 149 (DLC), ECF No. 4 (order unsealing docket on May 17, 2022)), incorporated by reference those defendants' then-sealed guilty pleas in the criminal cases. (*See Sec. and Exch. Comm'n v. Gregoire P. Tournant, et al.*, 22 Civ. 4016 (LLS), ECF No. 4-1, at 1 (Trevor Taylor Consent noting that the "[d]efendant has pled guilty to criminal conduct relating to certain matters alleged in the Complaint in th[e SEC] action"); ECF No. 4-3, at 1 (Stephen Bond-Nelson Consent noting the same) (hereinafter, together with Mr. Taylors's Consent, the "SEC Consent Agreements").) Simply put, the SEC and the USAO coordinated on charges, and the SEC relied on the USAO's sealed plea agreements with Messrs. Taylor and Bond-Nelson in resolving its investigation against those individuals.

The USAO and SEC also worked together in the filing and announcement of charges in this case and related actions. This singular approach is evidenced by the timing of the various initiating documents in these cases. On May 17, 2022, the same day that the Indictment against Mr. Tournant was brought, the SEC announced the filing of an enforcement action against Mr. Tournant. (*See Tournant, et al.*, 22 Civ. 4016 (LLS), ECF No. 1.) At the same time, the USAO and SEC also jointly announced settlements and plea deals with Allianz Global Investors US ("AGI") and two other Structured Alpha employees, Mr. Bond-Nelson and Trevor Taylor.

**B. The USAO and SEC Publicly Acknowledge their Partnership**

In announcing the filing of the Indictment and the various settlements and plea deals, both the USAO and SEC issued press releases in which they thanked each other for their support throughout the investigations. *See* United States Attorney's Office for the Southern District of

4

New York, *Three Portfolio Managers and Allianz Global Investors U.S. Charged in Connection with Multi-Billion Dollar Fraud Scheme*, United States Department of Justice (May 17, 2022), https://tinyurl.com/3renm34a ("Mr. Williams further thanked the U.S. Securities and Exchange Commission, which today filed a parallel civil action."); U.S. Sec. and Exch. Comm'n, *SEC Charges Allianz Global Investors and Three Former Senior Portfolio Managers with Multibillion Dollar Securities Fraud* (May 17, 2022), https://www.sec.gov/news/press-release/2022-84 ("The SEC appreciates the assistance of the U.S. Attorney's Office for the Southern District of New York . . . .").

That same day, the statements made by both the USAO and SEC at a joint press conference confirm that the two agencies worked hand-in-glove throughout the entirety of the investigations:

- **SDNY U.S. Attorney Damian Williams**: "And I'm also joined by Gurbir Grewal, the enforcement director at the SEC, and I want to thank him and his team for their extraordinary work ***in this matter***. I've been working ***shoulder to shoulder with the SEC*** for a very long time, and I can say this was the SEC at their very best. . . . ***I will say that this investigation has been run by this office, the SEC, and the postal inspection service, and that combination that I think has been quite successful in this case*** and in many others."

- **SEC Enforcement Director Gurbir Grewal**: "Finally, this is both a historic case and one that ***exemplifies our longstanding and productive working relationships with the United States Attorney's Office for the Southern District of New York*** and the U.S. Postal Inspection Service. This announcement and these partnerships should serve as a strong warning to wrongdoers that all of us are committed not only to rooting out and deterring misconduct in our markets, but also ***working together*** to restore investor trust and confidence in them. Again, ***I want to thank the U.S. Attorney and the Postal Inspector for their incredible partnership***, and I want to also commend the incredible work of the line prosecutors here in the Southern District, the agents in the Southern District, and the inspectors from the inspection service that worked ***on this case***."

United States Attorney's Office for the Southern District of New York, *U.S. Attorney Announces Charges Against Three Portfolio Managers and Allianz Global Investors U.S.*, YouTube (May 17, 2022), https://youtu.be/Q9ZiLt3sOxg, at 10:57–11:14, 20:44–21:30, 26:11–26:25 (transcribed) (emphasis added) (hereinafter, "May 17, 2022 USAO Video Conference").

5

## C. Overlapping Cases

The USAO's admissions also make clear that the Indictment is based on the same alleged scheme to defraud as set forth in the SEC Complaint against Mr. Tournant. Indeed, in an effort to prevent Mr. Tournant from obtaining any evidence, including exculpatory materials, from the SEC's files, the USAO attempted to intervene and to stay *all* discovery in the SEC proceeding. (*See Tournant, et al.*, 22 Civ. 4016, ECF No. 28, at 1.) The USAO's statements in its pre-motion letter seeking to intervene in the SEC action and stay the case further demonstrate that the SEC is indisputably a member of its prosecution team: "there is **substantial overlap** between the Civil Action and the Criminal Case." (*Id.* at 3 (emphasis added); *see also id.* at 1 (conceding that the criminal and civil proceedings implicate overlapping legal issues and are premised on the same alleged fraudulent scheme and incorporating by reference the Indictment's allegations as part of the factual basis for a discovery stay in the civil proceeding).)

In this same pre-motion letter, the USAO further confirmed that its prosecution and the SEC case against Mr. Tournant involve the *same* alleged fraudulent scheme as to (1) overstating the level of oversight over the Structured Alpha Funds; (2) misrepresenting the hedging and other risk-management strategies; and (3) hiding the true risk associated with the Funds' investments. (*Id.* at 1 (emphasis added).) In fact, *all* of the conduct alleged in the Indictment is also included in the SEC Complaint. (*Id.* at 1–2 (emphasis added).)

## D. USAO Refuses to Search the Files of the SEC for *Brady* Material

On June 3, 2022, this Court issued the Rule 5(f) Order. The Order stated that "the prosecution (i.e., the Government) has an affirmative duty to seek out and provide to the defense all material evidence that is favorable to [Mr. Tournant] and that is known to the Government or to federal, state, and local law enforcement personnel and officers who are or have been involved in the investigation or prosecution of the case." (ECF. No. 13, at 1.) The Rule 5(f) Order further

6

provided: "[a]s used here, the term 'Government' includes all federal state, and local law enforcement officers and other officials who have participated in the investigation and prosecution of the offense or offenses with which the defendant is charged." (*Id.* at 2.)

Consistent with the Court's Rule 5(f) Order and *Brady*'s mandate, Mr. Tournant requested in a letter dated September 12, 2022, that the Government produce *Brady* material within the files of the entire prosecution team, including the SEC. (Levine Decl., Ex. E at 1, 3.) In its letter to the Court the following day, the Government made no specific reference to producing *Brady* material from the SEC's files. (Levine Decl., Ex. F.) In a letter dated September 27, 2022, the Government included vague language in a footnote, making no mention of searching the SEC's files, asserting that it "will continue to produce on a rolling basis material required by governing case law, including *Brady* and *Giglio*." (Levine Decl., Ex. G at 1 n.1.) At the October 27, 2022 hearing, the Government represented to the Court that it has been reviewing its communications with the SEC and indicated that it was complying with its *Brady* obligations. (Levine Decl., Ex. I at 10–11.) As demonstrated by the Government's subsequent discovery letter that, again, made no reference to searching the SEC's files, the Government continues to ignore Mr. Tournant's requests to search for *Brady* material in the possession of the SEC. (*See* Levine Decl., Ex. H.)

## ARGUMENT

### I. The Government Violated the Court's Rule 5(f) Order in Refusing to Search the SEC's Files for *Brady* Material

Given the collaboration of the Government and the SEC in the investigation of this case, the Government's refusal to search the SEC's files for *Brady* material constitutes a clear violation of the Court's Rule 5(f) Order. The Rule 5(f) Order provides that *Brady* confers upon the "Government:"

> an affirmative duty to seek out and provide to the defense all material evidence that is favorable to the accused and that is known to the Government or to federal, state,

7

and local law enforcement personnel and officers who are or have been involved in the investigation or prosecution of the case.

(ECF No. 13, at 1.) The Rule 5(f) Order further directs that "[t]he Government must disclose such evidence to the defendant promptly after its existence becomes known to the Government, so as to enable the defense to have an opportunity to make effective use of the evidence in preparing its case and at trial, including a reasonable opportunity to investigate the information." (*Id.* at 2.) As relevant here, the Rule 5(f) Order defines the Government as "includ[ing] all federal state and local law enforcement officers and other officials ***who have participated in the investigation and prosecution of the offense or offenses with which the defendant is charged***." (*Id.* (emphasis added).)

Even without the benefit of full discovery, the Court's definition of the "Government" in the Rule 5(f) Order clearly includes the SEC. Here, the SEC participated in all 22 of the witness proffers conducted by the Government, as well as at least four presentations and seven calls involving the USAO and Allianz's counsel. The SEC also shared the materials that it received from Allianz, as well as at least some of the work product of its attorneys, with the USAO. (*See, e.g.*, Levine Decl., Ex. C at 45370 (affirming that the information in the affidavit is based in part on "documents and information collected by the [SEC]").) In fact, the USAO applications to obtain Mr. Tournant's cellphone location and pen register data specifically note that they are based, at least in part, on documents provided by the SEC, a summary chart prepared by SEC attorneys, and conversations that the USAO's case agent had with one or more SEC attorneys. (*See, e.g.*, Levine Decl. Ex. C at 45392 (stating that the affiant "reviewed a summary chart prepared by SEC attorneys"); Ex. B at 45338 (noting that the affidavit is based on documents that Allianz produced to the SEC), 45349 (referring to a summary chart prepared by the SEC attorneys showing

alleged alterations to various risk reports), 45352 (referencing the agent's conversation with an SEC attorney regarding alleged alterations).)

Moreover, the USAO and SEC publicly acknowledged their collaboration in the investigation of this case. The USAO and the SEC held a joint press conference to announce their filing of charges in which they each acknowledged that they worked together on the investigation of this case. (*See* May 17, 2022 USAO Video Conference.) As to the USAO, United States Attorney Williams touted the fact that his office has worked "shoulder to shoulder with the SEC" and that "***this investigation has been run by this office, the SEC and the postal inspection service and that combination that I think has been quite successful in this case*** and in many others." (*Id.* at 11:07–11:10, 26:12–26:20) (emphasis added).) Similarly, SEC Enforcement Director Grewal described his collaboration with the USAO on this case as a "partnership[]" and stated that this case "exemplifies [the SEC's] longstanding and productive working relationship with the [USAO] and the U.S. Postal Inspection Service." (*Id.* at 20:44–21:03.)

In addition to coordinating on the timing of the filing of their charges, the USAO's and SEC's charging documents also reveal their collaboration. For example, despite being executed at a time when Mr. Taylor's and Mr. Bond-Nelson's guilty pleas remained under seal, the SEC Consent Agreements as to Mr. Taylor and Mr. Bond-Nelson referenced their then-sealed guilty pleas, as well as the offenses to which these individuals pleaded guilty with a cite to the then-sealed docket. (*See* Consent Agreements, *Tournant, et al.*, 22 Civ. 4016 (LLS), ECF No. 4-1, at 1 (noting that Mr. Taylor, the "defendant[,] has pled guilty to criminal conduct relating to certain matters alleged in the Complaint in th[e] [SEC] action"); ECF No. 4-3, at 1 (noting the same as to Mr. Bond-Nelson).) Similarly, the SEC's settlement with AGI references AGI's settlement of the

criminal charges and provides that the final penalties owed to the SEC will be satisfied by the forfeiture and restitution ordered by the criminal judgment. (*See* Levine Decl., Ex. D at 9.)

Accordingly, these facts demonstrate that the SEC "participated in the investigation . . . of the . . . offense with which [Mr. Tournant] is charged" under the Rule 5(f) Order. The Government therefore has violated that Order based on its refusal to search the SEC's files for *Brady* material.

## II. The USAO Violated *Brady* in Refusing to Search the SEC's Files

The USAO violated its *Brady* obligations by refusing to search the files of the SEC—its investigative partner—for exculpatory evidence. Under *Brady*, the USAO "has a duty to disclose all material evidence favorable" to Mr. Tournant. *United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 161 (2d Cir. 2008); *see Kyles v. Whitley*, 514 U.S. 419, 437 (1995). The Government's *Brady* obligations extend beyond the materials in the Government's actual possession and impose on the Government "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case. . . ." *Kyles*, 514 U.S. at 437. This duty requires the USAO "to learn information when that information is possessed by others on the 'prosecution team.'" *United States v. Hunter*, 32 F.4th 22, 36 (2d Cir. 2022).

The Second Circuit has not articulated in a published decision a clear test to determine in what circumstances another agency is a member of the prosecution team, *id.* at 38 n.70, and there is a split of authority in this district concerning the proper standard to be applied. *See United States v. Blaszczak*, 308 F. Supp. 3d 736, 742 n.36 (S.D.N.Y. 2018) (discussing the split of authority). Some courts have held that the *Brady* obligation is triggered when the two agencies engage in joint fact-gathering. *See United States v. Gupta*, 848 F. Supp. 2d 491, 494 (S.D.N.Y. 2012); *see also, e.g.*, *United States v. Connolly*, 16-CR-370, 2017 WL 945934, at *6-7 (S.D.N.Y. Mar. 2, 2017). Under this approach, the emphasis is on whether the agencies engaged in "joint collection of exculpatory information that *Brady* compels the prosecutor to disclose." *Connolly*, 2017 WL

10

945934, at *7 ("'For purposes of *Brady*, how the agencies use the facts discovered jointly is irrelevant, and the joint investigation need not result in a joint prosecution.'" (quoting *Gupta*, 848 F. Supp. 2d at 493-94)); *see also United States v. Martoma*, 990 F. Supp. 2d 458, 460 (S.D.N.Y. 2014) (stating that the joint investigation standard "involves consideration of the 'degree of cooperation between agencies,' such as their coordination in conducting witness interviews and otherwise investigating the facts of the case"). By contrast, other courts in this district have held that an agency's joint fact-gathering in the investigative phase is not enough in the absence of some participation in the prosecution, such as "presenting the case to the grand jury;" "play[ing] a role in the development of prosecutorial strategy;" or "accompany[ing] the prosecution to court proceedings." *United States v. Middendorf*, 18-CR-36, 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018); *Blaszczak*, 308 F. Supp. 3d at 742.

The Second Circuit, however, has provided guidance in an unpublished decision reflecting that it would not follow the latter, stricter test. In *United States v. Barcelo*, 628 F. App'x 36 (2d Cir. 2015), the court stated:

> Individuals who perform investigative duties *or* make strategic decisions about the prosecution of the case are considered members of the prosecution team, as are police officers and federal agents who submit to the direction of the prosecutor and participate in the investigation.

*Id.* at 38 (emphasis added); *see also United States v. Bases*, 549 F. Supp. 3d 822, 829 (N.D. Ill. 2021) (rejecting the stricter *Middendorf* test and agreeing with this court's decision "in *Gupta* that joint fact-finding is sufficient to trigger the government's obligations under *Brady*").

The *Middendorf* test directly conflicts with the "prosecution team" standards articulated in *Barcelo*. Because, according to *Middendorf*, the participation in investigative fact finding, standing alone, is insufficient, *Middendorf* improperly deems "[i]ndividuals who perform investigative duties" to be non-prosecution team members, including the "police officer and

11

federal agents . . . who participate in the investigation" referenced in *Barcelo*. In fact, these individuals are prohibited from participating in grand jury proceedings under Federal Rule of Criminal Procedure 6(d), and they often do not attend court appearances (as in the present case) or participate in prosecution strategy sessions. As a result, contrary to *Barcelo* and common sense, the stricter *Middendorf* test would, in many cases, incongruously lead to the conclusion that even the Government's case agents are not members of the prosecution team. It also creates an unworkable standard in that the Court may be required to delay ruling on the prosecution team issue until it has held a sufficient number of court appearances to ascertain which agencies regularly attend, and it incentivizes prosecutors to encourage case agents to simply stay home to reduce their *Brady* obligations.

Moreover, the rule that joint fact-gathering is sufficient to render an agency part of the prosecution team is consistent with the purpose of *Brady*. As the Second Circuit stated: "Our Court and others have long recognized that *Brady* violations obscure a trial's truth-seeking function and, in so doing, place criminal defendants at an unfair disadvantage. When the government impermissibly withholds *Brady* material, 'its case [i]s much stronger, and the defense case much weaker, than the full facts would . . . suggest [].'" *United States v. Mahaffy*, 693 F.3d 113, 134 (2d Cir. 2012) (alterations in original) (quoting *Kyles*, 514 U.S. at 429). At bottom, the purpose of the *Brady* rule is "to apprise the defendant of exculpatory evidence obtained during the fact-gathering that might not otherwise be available to the defendant." *Gupta*, 848 F. Supp. 2d at 494; *see also, e.g.*, *Connolly*, 2017 WL 945934, at *6-7. Consistent with this purpose, under the joint fact-gathering standard, "'how agencies use the facts discovered jointly is irrelevant'" to the determination of whether the other agency is a member of the prosecution team. *Connolly*, 2017 WL 945934, at *6 (quoting *Gupta*, 848 F. Supp. 2d at 493-94). In other words, the stricter test

"place[s] too much focus on whether the two agencies correlated their prosecutorial strategies," *Bases*, 549 F. Supp. 3d at 829, which is irrelevant for purposes of *Brady*—as opposed to properly focusing on the fact-gathering phase which gave rise to the *Brady* right.

Applying the joint fact-gathering test to the facts concerning the USAO's and SEC's joint investigation, the Court should conclude that the SEC is a member of the prosecution team. As discussed in greater detail in Part I, *supra*, the USAO and the SEC publicly stated that the agencies ran the investigation together, including (1) conducting all witness proffers together; (2) jointly attending numerous Allianz presentations that conveyed a wealth of information based on an extensive internal investigation; (3) jointly participating in calls with Allianz and its counsel to gather more information; (4) extensive document and information sharing; and (5) coordinating charges and cross-referencing respective court filings. Accordingly, Mr. Tournant respectfully submits that the USAO is obligated to search for and produce any *Brady* material in the SEC's possession, including documentary evidence in the SEC files and unrecorded or undocumented information in the possession of the SEC staff. *See United States v. Rodriguez,* 496 F.3d 221, 222 (2d Cir. 2007) ("When the Government is in possession of material information that impeaches its witnesses or exculpates the defendant, it does not avoid the obligation under *Brady/Giglio* to disclose the information by not writing it down.").

### III.   Alternatively, the Court Should Order an Evidentiary Hearing

Mr. Tournant submits that the Government's prior admissions, along with the other facts set out above, compel the conclusion that the USAO and the SEC participated in a joint investigation. Therefore, the Government is obligated to produce *Brady* and other discovery materials from the SEC's files. Should the Court find that the record is not sufficiently developed to conclude that the SEC is part of the prosecution team, Mr. Tournant respectfully requests that the Court hold an evidentiary hearing to determine (1) the extent of cooperation between the

13


Government and SEC in the investigation of this case, and (2) the Government's ability to access the SEC's files.  *See Gov't of the V.I. v. Martinez*, 780 F.2d 302, 306 (3d Cir. 1986) ("Where a factual question is raised as to whether a *Brady* violation occurred, the defendant is 'entitled to have it determined by the district court in a hearing appropriate to the factual inquiry.'" (quoting *United States v. Alexander*, 748 F.2d 185, 193 (4th Cir. 1984))).

In addition, to the extent the Court concludes that the *Middendorf* standard applies, a hearing is necessary because the record is not fully developed as to the SEC's role in crafting prosecution strategy.  The SEC frequently relies on criminal convictions to resolve parallel SEC charges as a matter of law based on collateral estoppel principles, and there is thus the incentive for the USAO and SEC to coordinate their charging instruments to allow for this possibility.  While the available evidence demonstrates that the USAO and SEC coordinated on the timing of their charges, Mr. Tournant has not had the opportunity to take discovery or fully develop the record on the USAO's and SEC's collaboration on the substance of their charges—although the SEC's settlement materials that cross reference sealed guilty pleas demonstrate that some collaboration in fact occurred.

## CONCLUSION

For the foregoing reasons, Mr. Tournant respectfully requests that the Court order the Government to produce exculpatory and discoverable materials from the files of the SEC.

Dated: New York, New York
December 23, 2022

By: /s/ Seth L. Levine
Seth L. Levine
Alison M. Bonelli

**LEVINE LEE LLP**
1500 Broadway, Suite 2501
New York, New York 10036
Telephone: (212) 223-4400
slevine@levinelee.com
abonelli@levinelee.com

**BUCKLEY LLP**
Daniel R. Alonso
Olivia Rauh
1133 Avenue of the Americas, Suite 3100
New York, New York 10036
dalonso@buckleyfirm.com
orauh@buckleyfirm.com