# EXHIBIT W



U.S. Department of Justice

Office of the Deputy Attorney General

---

The Deputy Attorney General　　　　　　　　　　　Washington, D.C. 20530

October 28, 2021

MEMORANDUM FOR　　ASSISTANT ATTORNEY GENERAL, CRIMINAL DIVISION
　　　　　　　　　　ACTING ASSISTANT ATTORNEY GENERAL, CIVIL DIVISION
　　　　　　　　　　ACTING ASSISTANT ATTORNEY GENERAL, ANTITRUST DIVISION
　　　　　　　　　　ASSISTANT ATTORNEY GENERAL, ENVIRONMENT AND NATURAL RESOURCES DIVISION
　　　　　　　　　　ACTING ASSISTANT ATTORNEY GENERAL, TAX DIVISION
　　　　　　　　　　ACTING ASSISTANT ATTORNEY GENERAL, NATIONAL SECURITY DIVISION
　　　　　　　　　　DIRECTOR, FEDERAL BUREAU OF INVESTIGATION
　　　　　　　　　　DIRECTOR, EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS
　　　　　　　　　　ALL UNITED STATES ATTORNEYS

FROM:　　　　　　　THE DEPUTY ATTORNEY GENERAL  *[signed] Lisa Monaco*

SUBJECT:　　　　　Corporate Crime Advisory Group and Initial Revisions to Corporate Criminal Enforcement Policies[1]

　　　Fighting corporate crime is a top priority of the Department of Justice. By holding accountable individuals and companies responsible for criminal malfeasance, the Department protects the public, promotes the integrity of our markets, discourages unlawful business practices, fights transnational corruption, and upholds the rule of law. Additionally, we ensure public confidence in the fairness of our economic system and make clear that no one is above the law.

　　　This Memorandum makes certain revisions to the Department's existing corporate criminal enforcement policies and practices. The changes announced today will aid Department attorneys immediately in our ongoing efforts to combat corporate crime and ensure consistency in our efforts to prevent corporate criminal conduct from occurring in the first instance; hold accountable individuals responsible for corporate crimes; and ensure that corporations take steps to prevent the recurrence of criminal conduct. I view these changes, which (1) instruct our attorneys to consider a corporation's entire criminal history, (2) clarify a corporation's obligation to provide all information concerning all persons involved in corporate misconduct in order to receive

---

[1] This Memorandum does not supersede or in any way alter the Antitrust Division's Corporate Leniency Policy.

Memorandum from the Deputy Attorney General                                      Page 2
Subject: Corporate Crime Advisory Group and Initial Revisions to Corporate Criminal
         Enforcement Policies

cooperation credit, and (3) address the use of monitorships, as necessary and fundamental revisions warranting immediate adoption.

I am also announcing, through this Memorandum, the creation of a Corporate Crime Advisory Group within the Department that will consider and, where necessary, recommend additional guidance concerning the three revisions set forth herein. This group will also consider additional revisions and reforms that will strengthen our approach to corporate crime and equip our attorneys with the tools necessary to prosecute it when it occurs.

I am confident that Department attorneys will continue to thoughtfully evaluate the Principles of Federal Prosecution of Business Organizations, as amended by this Memorandum, and other operative guidance, in their determination of the appropriate and just resolution in corporate cases.

### I.  Creation of the Corporate Crime Advisory Group

I will convene a Corporate Crime Advisory Group within the Department of Justice tasked with reviewing our approach to prosecuting criminal conduct by corporations and their executives, management, and employees. The Corporate Crime Advisory Group will bring together relevant components in the Department and will have a broad mandate to consider various topics that are central to the goal of updating our approach to corporate criminal enforcement. These topics will include traditional considerations embodied in the Principles of Federal Prosecution of Business Organizations, such as cooperation credit, corporate recidivism, and the factors bearing on the determination of whether a corporate case should be resolved through a deferred prosecution agreement ("DPA"), non-prosecution agreement ("NPA"), or plea agreement.

The Corporate Crime Advisory Group will also look internally to see how the Department can best support the tireless work of our dedicated prosecutors and civil attorneys on the front line in combatting corporate crime. The group will consider how the Department can invest in new technologies, such as artificial intelligence, to assist in the often laborious task of processing vast amounts of data. It will also consider how best to employ our resources across the Department to investigate and prosecute corporate crime. Finally, because I firmly believe that the best process includes input from a variety of voices, the Corporate Crime Advisory Group will solicit input from the business community, academia, and the defense bar to make sure that any changes to Department policy take into account multiple perspectives.

I look forward to receiving recommendations from the Corporate Crime Advisory Group. More information about the creation of this group will soon be issued by my office. In the meantime, I am taking additional, immediate steps, described below, to revise and clarify certain aspects of the Department's corporate criminal enforcement policies.

Case 1:22-cr-00276-LTS   Document 55-23   Filed 01/30/23   Page 4 of 6

Memorandum from the Deputy Attorney General                                    Page 3
Subject: Corporate Crime Advisory Group and Initial Revisions to Corporate Criminal
    Enforcement Policies

## II.  Considering a Corporation's History of Misconduct

A corporation's record of past misconduct—including violations of criminal laws, civil laws, or regulatory rules—may be indicative of whether the company lacks the appropriate internal controls and corporate culture to disincentivize criminal activity, and whether any proposed remediation or compliance programs, if implemented, will succeed. Prosecutors must therefore take a holistic approach when considering a company's characteristics, including its history of corporate misconduct, without limiting their consideration to whether past misconduct is similar to the instant offense.

To that end, when making determinations about criminal charges and resolutions for a corporate target, prosecutors are directed to consider *all* misconduct by the corporation discovered during any prior domestic or foreign criminal, civil, or regulatory enforcement actions against it, including any such actions against the target company's parent, divisions, affiliates, subsidiaries, and other entities within the corporate family. Some prior instances of misconduct may ultimately prove less significant, but prosecutors must start from the position that all prior misconduct is potentially relevant.

Modifications to Justice Manual (JM) 9-28.600 will be forthcoming consistent with this guidance. All other factors listed in JM 9-28.600 remain in effect and should be considered in combination with this new guidance.

## III.  Information About Individuals Involved in Corporate Misconduct

This Memorandum reinstates the prior guidance issued by this Office that to qualify for any cooperation credit, corporations must provide to the Department all relevant facts relating to the individuals responsible for the misconduct. *See* Memorandum from Deputy Attorney General Sally Quillian Yates, "Individual Accountability for Corporate Wrongdoing" (Sept. 9, 2015). To be clear, this means all nonprivileged information relevant to all individuals involved in the misconduct.

One of the most effective ways to combat corporate misconduct is to hold accountable the individuals who perpetrated the wrongdoing. Such accountability is important for several reasons: it deters future illegal activity, it incentivizes changes in corporate behavior, it ensures that the proper parties are held responsible for their actions, and it promotes the public's confidence in our justice system and economy.

To receive any consideration for cooperation, the company must identify all individuals involved in or responsible for the misconduct at issue, regardless of their position, status, or seniority, and provide to the Department all nonprivileged information relating to that misconduct. To receive such consideration, companies cannot limit disclosure to those individuals believed to be only substantially involved in the criminal conduct. This requirement includes individuals inside and outside of the company. Department attorneys are best situated to assess the relative culpability of, and involvement by, individuals involved in misconduct, to include those

Memorandum from the Deputy Attorney General                                Page 4
Subject: Corporate Crime Advisory Group and Initial Revisions to Corporate Criminal
  Enforcement Policies

individuals who, while deemed by a corporation to be less than substantially involved in misconduct, may nonetheless have important information to provide.

Modifications to JM 9-28.700 and 9-47.120 will be forthcoming consistent with this guidance. All prior statements from the Department inconsistent with the guidance set forth herein should be considered rescinded.

### IV. Revisions to Monitorship Guidance

This Memorandum modifies standards, policies, and procedures for evaluating the necessity of monitors[2] in corporate criminal matters being handled by Department attorneys in order to (1) bring uniformity to our approach across Department components and United States Attorneys' Offices and (2) clarify the relevant factors for consideration.[3] The principles contained in this Memorandum shall apply to all determinations in criminal matters regarding whether a monitor is appropriate in specific cases, regardless of the form of the resolution.

Independent corporate monitors can be an effective resource in assessing a corporation's compliance with the terms of a corporate criminal resolution, whether a DPA, NPA, or plea agreement. Monitors can also be an effective means of reducing the risk of repeat misconduct and compliance lapses identified during a corporate criminal investigation.

The Department is committed to imposing monitors where appropriate in corporate criminal matters. Department attorneys should analyze and carefully assess the need for the imposition of a monitor on a case-by-case basis. As explained in prior guidance, two broad considerations should guide prosecutors when assessing the need for and propriety of a monitor: (1) the potential benefits that employing a monitor may have for the corporation and the public, and (2) the cost of a monitor and its impact on the operations of a corporation.

In general, the Department should favor the imposition of a monitor where there is a demonstrated need for, and clear benefit to be derived from, a monitorship. Where a corporation's compliance program and controls are untested, ineffective, inadequately resourced, or not fully implemented at the time of a resolution, Department attorneys should consider imposing a monitorship. This is particularly true if the investigation reveals that a compliance program is

---

[2] This guidance is limited to monitors, and does not apply to third parties, whatever their titles, retained to act as receivers or trustees or to perform other functions.

[3] This Memorandum revises, supplements, and, in part, supersedes Part A of the guidance provided to the Department's Criminal Division through the October 11, 2018, memorandum entitled, "Selection of Monitors in Criminal Division Matters," issued by then-Assistant Attorney General Brian A. Benczkowski (hereinafter the Benczkowski Memorandum), and further supplements the March 7, 2008, memorandum addressed to all Department components and United States Attorneys entitled, "Selection and Use of Monitors in Deferred Prosecution Agreements and Non-Prosecution Agreements with Corporations," issued by then-Acting Deputy Attorney General Craig S. Morford. This Memorandum revises only Part A of the Benczkowski Memorandum, entitled "Principles for Determining Whether a Monitor is Needed in Individual Cases," and does not alter the remainder of the Benczkowski Memorandum (*i.e.*, Parts B through G), which remains in full force and effect as to the Criminal Division.

Memorandum from the Deputy Attorney General   Page 5
Subject: Corporate Crime Advisory Group and Initial Revisions to Corporate Criminal Enforcement Policies

deficient or inadequate in numerous or significant respects. Conversely, where a corporation's compliance program and controls are demonstrated to be tested, effective, adequately resourced, and fully implemented at the time of a resolution, a monitor may not be necessary.

Finally, at a minimum, the scope of any monitorship should be appropriately tailored to address the specific issues and concerns that created the need for the monitor.

### V.  Conclusion

The guidance in this Memorandum will apply to all future investigations of corporate wrongdoing. It also applies to those matters pending as of the date of this Memorandum, to the extent practicable.

Revisions to the Justice Manual to reflect the changes described herein are forthcoming.