# EXHIBIT X

# Expert Q&A on the DOJ's Yates Memo

by Practical Law Litigation

Law stated as of 14 Mar 2016  •  USA (National/Federal)

*An expert Q&A with Nicolas Bourtin of Sullivan & Cromwell LLP discussing the US Department of Justice (DOJ)'s recent memorandum announcing new guidelines to ensure that its attorneys effectively target culpable individuals involved in corporate wrongdoing. This expert Q&A explains the directives in the DOJ's memorandum and the implications for counsel representing a company or an individual under investigation.*

The US Department of Justice (DOJ) issued a memorandum announcing new guidelines to ensure that its attorneys effectively target culpable individuals involved in corporate wrongdoing.

Practical Law asked Nicolas Bourtin of Sullivan & Cromwell LLP to explain the directives in the DOJ's memorandum and the implications for counsel representing a company or an individual under investigation. Nic's practice focuses on white collar criminal defense and internal investigations, regulatory enforcement matters, and securities and complex civil litigation. He has extensive experience representing financial institutions in parallel regulatory and criminal investigations. Nic also has served as an Assistant US Attorney in the Eastern District of New York, where he conducted investigations, prosecutions, and trials involving fraud, corruption, money laundering, and other white collar offenses.

## What is the Yates Memo, and why is it significant?

The Yates Memo, issued on September 9, 2015 by US Deputy Attorney General Sally Quillian Yates, instructs all DOJ attorneys to focus on individual accountability when investigating and resolving matters of corporate misconduct. The memorandum recognizes that holding individuals responsible for their actions is one of the most effective ways to combat and deter illegal corporate activity. At the same time, it acknowledges the challenges of determining whether individuals in large companies possessed the knowledge and criminal intent necessary to establish liability, particularly for high-level executives "who may be insulated from the day-to-day activity in which the misconduct occurs."

The Yates Memo sets out the following key steps to guide DOJ attorneys in their efforts to identify and hold individuals accountable:

- **Take an "all or nothing" approach to cooperation credit.** The DOJ will grant cooperation credit only where companies disclose "all relevant facts" relating to the individuals responsible for the misconduct, and will no longer give partial credit for disclosures that do not include information about individuals. The Yates Memo puts the onus on the company to learn of and fully disclose the relevant facts, requiring the company to:

- investigate and identify all individuals involved in or responsible for the misconduct, regardless of position, status, or seniority; and

- provide the DOJ with all non-privileged information relating to the misconduct.

- **Investigate individuals from the outset.** DOJ attorneys should focus on individual wrongdoing from the inception of a corporate investigation.

- **Communicate often with DOJ counterparts.** Criminal and civil DOJ attorneys should hold "early and regular" communications with one another to ensure that their counterparts are informed of facts giving rise to potential liability, and coordinate with each other when pursuing parallel civil and criminal investigations.

- **Preserve the DOJ's ability to pursue charges against individuals.** Absent extraordinary circumstances, DOJ attorneys should not agree to a corporate resolution that releases civil claims, dismisses criminal charges, or provides immunity for culpable individuals.

- **Develop a clear plan to resolve open investigations of individuals.** Where DOJ attorneys seek approval of a corporate resolution before completing the investigation of individual misconduct, they must submit in writing:

    - information regarding the potentially liable individuals and the status of the investigation;

    - a plan to resolve the investigation before any statute of limitations expires; and

    - the reasons for any decisions not to pursue civil or criminal action against the individuals, which must be approved by the appropriate Assistant Attorney General or US Attorney.

- **Consider factors beyond an individual's ability to pay a civil judgment.** Recognizing the significant deterrent value of civil suits against individuals, the Yates Memo provides that DOJ attorneys should not base decisions about whether to pursue these suits solely on an individual's ability to satisfy a monetary judgment. Rather, civil DOJ attorneys must consider additional factors, such as whether:

    - the individual's misconduct was serious;

    - there is sufficient evidence to obtain a judgment; and

    - pursuing the action reflects an important federal interest.

(Memorandum from the US Department of Justice's Office of the Deputy Attorney General on Individual Accountability for Corporate Wrongdoing (Sept. 9, 2015).)

The Yates Memo's guidance applies to all future DOJ investigations of corporate misconduct and any pending investigations, to the extent practicable. See I Want You! DOJ's New Policy on Corporate Investigations Focuses on Individuals for more on the Yates Memo's directives.

**How does the Yates Memo depart from previous DOJ policies?**

The emphasis on individual accountability in corporate investigations is not new. Rather, the Yates Memo is the culmination of several existing DOJ policies and recent pronouncements concerning the pursuit of corporate misconduct.

For example, the DOJ's Principles of Federal Prosecution of Business Organizations (DOJ Principles), first promulgated in a 1999 memorandum issued by then-Deputy Attorney General Eric Holder and eventually codified in the US Attorneys' Manual, instructed that prosecutors should "consider the deterrent value of prosecutions of individuals within the corporation" and "rarely negotiate away individual criminal liability in a corporate plea." (Memorandum from the US Department of Justice's Deputy Attorney General on Bringing Criminal Charges Against Corporations (June 16, 1999).)

The DOJ Principles have been revised several times to incorporate guidance from subsequently released DOJ memoranda on targeting corporate wrongdoing, beginning with the Thompson Memo issued in 2003 by then-Deputy Attorney General Larry Thompson. Among other things, the Thompson Memo specified "the corporation's willingness to identify the culprits within the corporation, including senior executives," as a consideration in determining whether a company should receive cooperation credit. Additionally, companies were expected to waive the attorney-client privilege if necessary to make a complete disclosure, and avoid advancing or indemnifying the attorneys' fees of culpable employees. (Memorandum from US Department of Justice Deputy Attorney General on Principles of Federal Prosecution of Business Organizations (Jan. 20, 2003).)

Later iterations of the DOJ Principles eliminated the privilege waiver requirement and attorneys' fees restriction, but preserved the insistence that companies disclose the "relevant facts about the putative misconduct" to be eligible for cooperation credit (US Attorneys' Manual, Principles of Federal Prosecution of Business Organizations § 9-28.720).

Further, particularly since the financial crisis, the DOJ has sought to allay the public criticism that the government has not sufficiently held individuals responsible for corporate misconduct. Senior officials have repeatedly emphasized in public statements that prosecuting culpable individuals is a DOJ priority (see, for example, Justice News, Attorney General Holder Remarks on Financial Fraud Prosecutions at NYU School of Law (Sept. 17, 2014)). Similarly, DOJ officials have underscored that full and effective cooperation involves the disclosure of individual misconduct (see, for example, Justice News, Remarks by Principal Deputy Assistant Attorney General for the Criminal Division Marshall L. Miller at the Global Investigation Review Program (Sept. 17, 2014)).

In short, individual accountability has long animated the DOJ's approach to corporate prosecution. The changes to the DOJ's policies instituted by the Yates Memo are more procedural than substantive, and reflect a shift in emphasis rather than a new initiative.

### How might the DOJ's new approach to cooperation credit impact corporate practices and employee relations?

While the Yates Memo's all-or-nothing approach to cooperation credit has garnered the most attention, whether it will amount to a dramatic change in practice is debatable. Even before the Yates Memo, most practitioners assumed that any company that declined to provide or actively hid relevant information about corporate misconduct would receive little, if any, cooperation credit. Therefore, it remains to be seen whether the Yates Memo will end up being largely symbolic or result in a measurable increase in individual prosecutions.

Regardless, the Yates Memo's focus on individual accountability will likely strain the relationship between a company under investigation and its employees. Particularly in investigations where the facts are ambiguous and the issue of culpability is not clear cut, the tension between a company's desire to give its employees the benefit of the doubt and its obligations to find and report facts suggesting misconduct could cause irreparable damage to corporate culture and unity.

Employees will justifiably worry that their interests conflict with those of the company. At the same time, companies seeking cooperation credit will want to avoid any appearance of protecting culpable employees. Moreover, directors and audit committees supervising internal investigations will now insist that counsel make searching inquiries into the conduct of all employees, regardless of seniority, and report their findings unsparingly.

See Criminal and Civil Liability for Corporations, Officers and Directors for more on cooperation credit, as well as an overview of the potential liability that companies and employees could face for corporate misconduct.

### What changes instituted by the Yates Memo will likely have the biggest impact on the DOJ's investigative practices?

The requirement that DOJ attorneys obtain approval of a written plan for resolving the investigation of individuals and justify any decisions not to pursue charges could have a discernible impact on investigative practices. Previously, it was not uncommon for prosecutors to delay making determinations on individual criminal charges until late in an investigation, particularly given the difficulty of proving criminal intent. Because complex corporate investigations can take years to complete and often involve conduct that occurred in the distant past, individuals in some cases waited out the prosecution's focus on the company until the statute of limitations for bringing individual charges expired. However, the internal procedural changes imposed by the Yates Memo will impose discipline on prosecutors, forcing them to consider bringing individual charges early in an investigation and articulate the reasons for declining to bring suit.

Additionally, the Yates Memo signals a more forceful approach to civil enforcement against individuals. In recent years, the DOJ has increasingly leveraged the investigative and punitive power of the False Claims Act, the Financial Institutions Reform, Recovery, and Enforcement Act, and other civil enforcement statutes against companies. The cooperation between criminal and civil prosecutors advocated by the Yates Memo will likely lead to an increase in the number and depth of these civil investigations. Moreover, the lower burden of proof applied in civil as opposed to criminal cases, combined with the policy of pursuing civil suits regardless of the prospects of a financial recovery, will likely lead to civil enforcement actions against employees in cases that DOJ attorneys would not previously have viewed as worth the effort.

**Have there been any noteworthy developments related to the Yates Memo?**

On November 16, 2015, the DOJ issued a revised US Attorneys' Manual incorporating the Yates Memo's guidance, with substantial revisions to the DOJ Principles. Among other things, the revised US Attorneys' Manual:

- Affirms that while companies must disclose all relevant facts during an investigation, they are not required to waive the attorney-client privilege or work product protection as previously expected under the Thompson Memo. Although the DOJ has insisted that companies need only report facts, and not concede what inferences or legal conclusions should flow from those facts, the process of making full disclosures within the bounds of privilege might not be as straightforward as the DOJ suggests.

- Instructs prosecutors to consider whether individual charges "will adequately satisfy the goals of federal prosecution." While previous versions of the DOJ Principles included similar directives, given the Yates Memo's emphasis on individual accountability, this language might give companies hope that the DOJ will more frequently conclude that its pursuit of individual charges, without prosecution of the company itself, is sufficient to vindicate the government's interests.

(US Attorneys' Manual, Principles of Federal Prosecution of Business Organizations §§ 9-28.720, 9-28.1300; see also Justice News, Deputy Attorney General Sally Quillian Yates Delivers Remarks at American Banking Association and American Bar Association Money Laundering Enforcement Conference (Nov. 16, 2015) (stating that the attorney-client privilege remains intact and explaining what sort of information the privilege covers).)

Additionally, on February 4, 2016, the DOJ announced that the Fraud Section of its Criminal Division is developing a process to require companies to confirm that they have fully disclosed all non-privileged information about individuals involved in wrongdoing before finalizing a settlement agreement (Wall Street Journal, *U.S. Justice Dept to Require Certification of Cooperation in Investigations* (Feb. 4, 2016)). Because the DOJ has not indicated precisely what form these certifications should take, however, it remains unclear:

- Whether the certification may form part of the settlement documents, with the settlement being conditioned on its accuracy. In this situation, a finding that the certification was not accurate could expressly provide an independent basis to void the settlement or find the company in breach of it.

- Which company employee must sign the certification, thereby subjecting himself to potential liability for a false certification. Signatories might insist on sub-certifications from members of the investigation team, similar to the process followed for reporting under the Sarbanes–Oxley Act.

Finally, several DOJ settlements with companies since the issuance of the Yates Memo omit releases with individuals (see, for example, Settlement Agreement between United States of America and Franklin American Mortgage Co. ¶ 3 (Dec. 2, 2015); Settlement Agreement between United States of America

and Vericare Management, Inc. ¶ 9 (Oct. 29, 2015)), which could signal an end to the common practice of releasing individuals as part of settlements with the current or former employers.

## In the wake of the Yates memo, are companies under investigation by the DOJ more likely to advance or indemnify attorneys' fees for employees?

Because advancing and indemnifying attorneys' fees remains permissible for a company cooperating pursuant to DOJ policy, companies might be more inclined to do so as a way of leveling the playing field for their employees and ensuring that someone is looking out for employees' individual interests. Companies contemplating the possibility of a future criminal investigation should review the governing law in their state of incorporation, as well as their by-laws, policies, and directors and officers liability insurance, for information on the advancement and indemnification of attorneys' fees.

Where possible, companies may be wise to advance fees pursuant to an agreement that they can cease the advancement and claw back past fees if an employee is found liable for misconduct or acts against the company's interests. Indeed, banking regulations in certain circumstances require financial institutions to insist on these agreements before they can advance fees (see, for example, 12 C.F.R §§ 7.2014(a), 359.5(a)). Ultimately, companies should ensure that they have maximum flexibility under state corporate law and their own by-laws.

## What ethical issues does the Yates Memo raise for counsel representing a company under investigation?

It is a long-standing principle that, when interviewing employees, company counsel are ethically bound to provide *Upjohn* warnings, explaining that counsel represent the company in an investigation rather than the individual employees and that the attorney-client privilege belongs to the company. *Upjohn* warnings address the risk that an employee will admit to culpability under the mistaken belief that counsel has a duty to keep their communications confidential. Because the Yates Memo emphasizes that companies should turn over evidence implicating employees involved in corporate misconduct, it is increasingly important for company counsel to provide consistent and complete *Upjohn* warnings before any substantive conversations with employees. This is particularly true given post-Yates Memo requests from the DOJ that companies refrain from sharing certain information with employees (and their counsel) during investigations, especially where an employee will likely provide testimony.

Relatedly, company counsel must now tread even more carefully before deciding to jointly represent a company and its employees in government interviews or related civil litigation. A joint representation might:

- Signal to the DOJ, perhaps inadvertently, that the company is not committed to turning over all relevant evidence of employee misconduct, and instead prefers to keep its interests aligned with those of its employees.

- Increase the risk that counsel will learn a privileged fact suggesting an employee's culpability in the course of the individual representation. Counsel and the company would then be unable to share that fact without the employee's consent, creating an immediate and perhaps unwaivable conflict

of interest for counsel, and potentially restricting the company's ability to provide all relevant information.

Finally, company counsel should consider whether to recommend separate counsel for employees facing potential individual criminal liability, before the employees are interviewed as part of an internal investigation. On the one hand, a guilty employee may refuse to be interviewed following advice from individual counsel, hampering the company's ability to find and report relevant facts to the DOJ. On the other hand, absent advice from individual counsel, even iron-clad *Upjohn* warnings might not fully alert an employee to the stakes involved in participating in an interview. Moreover, employees are likely to give more complete and truthful answers where they have received the benefit of separate counsel. Generally, the government is willing to recognize the inherent fairness of securing separate counsel for employees at risk of criminal liability in this context.

See Practice Notes, Attorney-Client Privilege: Clients and Client-Agents (Federal) and Attorney-Client Privilege: Attorneys and Attorney-Agents (Federal) for more on the privilege concerns that arise in the corporate context, including joint representation issues.

### In light of the new guidance, what tips can you offer counsel representing a company under investigation by the DOJ?

Counsel advising companies under investigation should:

- **Consider providing employees with individual counsel.** As discussed above, counsel should assess early on whether to recommend separate counsel for any employees whom the government might view as subject to individual liability.

- **Appoint neutral decision-makers.** To help avoid claims by DOJ attorneys that potentially culpable individuals selectively or partially disclosed relevant information, counsel should ensure that individuals without any connection to the implicated conduct direct decisions about what information to provide. If necessary, these decisions can be made by disinterested board members, such as those on an audit committee.

- **Seek agreement with prosecutors on the investigation's scope.** To best comply with the company's obligation to disclose all relevant facts on the individuals involved in corporate misconduct, counsel must understand the scope of the issues about which the DOJ expects to receive information.

- **Consider how to provide information about employees without admitting liability.** Because specifically attributing involvement in corporate misconduct to individuals might be seen as an acknowledgement of liability, counsel should express clearly to DOJ attorneys that although the company is providing all relevant facts with respect to the individuals under investigation, it is not admitting that their conduct was criminal.

See Handling a Government Investigation of a Senior Executive Checklist and Government Investigations of Corporate Fraud: Consequences for In-House Counsel for more on issues company counsel should consider when facing a government investigation.

**Do you have any tips for counsel representing an individual under investigation by the DOJ?**

Counsel advising individuals under investigation should:

- **Seek timely information about the investigation.** In post-Yates Memo investigations, company counsel might be reluctant to share information with employees because of the risk of receiving less cooperation credit from the government. Counsel for individuals should be proactive about seeking internal cooperation and access to any documents or other evidence generated by or against the individual. If the government discourages company counsel from providing that information, it may fall to individual counsel to reach out directly to the government to make the case why disclosure is fair and necessary for effective representation.

- **Seek to ensure that the company's provision of information relevant to counsel's client is complete and balanced.** Counsel for individuals should try to work with company counsel to ensure that the facts disclosed by the company about an individual's conduct and potential liability are portrayed fairly. Those efforts should continue to the drafting of any settlement agreement with the DOJ before an investigation of the individual has been completed, recognizing that individual counsel may have limited opportunity to review or provide input into those findings.