

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 17, 2023

**BY EMAIL**

The Honorable Laura Taylor Swain
Chief United States District Judge
500 Pearl Street
Southern District of New York
New York, New York 10007

   Re: *United States v. Gregoire Tournant*, 22 Cr. 276 (LTS)

Dear Chief Judge Swain:

  The Government's filter team respectfully submits this letter supplementing the Government's brief (Dkt. 61) opposing defendant Gregoire Tournant's motion to dismiss the indictment in the above-referenced case (Dkt. 54, the "Defense Brief" or "Def. Br."). Because this letter discusses information that is subject to a claim of privilege by the defense, the Government consents to its being filed under seal subject to any subsequent determination by the Court that some or all of the material referenced herein is not privileged.

  Tournant's brief relies on a factual narrative that is, in important respects, at least incomplete. But he also asserts privilege over parts of that narrative, as well as over key information that is omitted from his version of events. As a result of both those omissions and the defense's assertion of privilege, the prosecution team is unaware of certain facts that bolster arguments made in their opposition brief.[1] We write first to identify those omitted facts, which the

---

[1] The Government disputes all of Tournant's privilege assertions. But even if the Court were to accept the central premise of Tournant's arguments—that communications to Sullivan & Cromwell during the period of joint representation were privileged—many of the redactions for privilege in the Defense Brief would still be overbroad. The effect of Tournant's overbroad privilege claims is to make it more difficult for the prosecution team to respond. Tournant claims privilege over, for instance, (1) his own allegations about Allianz's counsel's motivations (*e.g.* Def. Br. at 11-13); (2) information Allianz's counsel learned, evidently from sources other than Tournant, about Tournant's use of a second cellphone (*id.* at 12, 41); (3) Sullivan & Cromwell's factual claim that the firm read its notes of the June 3 meeting to the Government in full (*id.* at 14, 21); and (4) communications with Allianz counsel predating any joint representation (*id.* at 19 (redacting an excerpt from Def. Ex. H)). None of these are "communications…between a client and his…attorney…for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). The Court can and should order the unredaction of these categories of overbroad privilege assertions even before it resolves the motion to dismiss.

prosecution team is unable to learn or use in its own arguments, and second to explain why those facts further support the denial of Tournant's motion to dismiss.

## I.       Key Facts Not Available to the Prosecution Team

We presume the Court's familiarity with the background described in the briefing, and only recount a few relevant facts here for context. As the Court knows, Sullivan & Cromwell ("S&C") was one of the law firms representing Allianz during the SEC's (and later the Government's) investigations into unlawful conduct by Tournant and others. On November 17, 2020—during the SEC's investigation, but long before the existence of the Government's separate criminal investigation became known to Allianz—S&C agreed to jointly represent Tournant. Another law firm representing Allianz, Ropes & Gray, likewise agreed to jointly represent Tournant. By the time those joint representations began, Tournant already had individual counsel, a partner at Milbank LLP. Tournant signed an S&C engagement letter that was addressed to his individual counsel, establishing a joint representation, but providing that Tournant (1) agreed that Allianz could unilaterally decide to waive privilege and/or release to third parties, including the Government, information Tournant provided to company counsel, and (2) understood that such disclosure would "mean that the protections of the attorney-client privilege that you may have…would no longer apply." (Def. Ex. A at 3).

Tournant's motion to dismiss focuses in significant part on a meeting held on June 3, 2021. At that time, Tournant was preparing to be deposed by the SEC, and the Government's criminal investigation was still secret. (The Government would inform Allianz of its criminal investigation a week later, on June 10, 2021.) On June 3—while still jointly represented by Allianz's outside counsel and his own individual counsel at Milbank—Tournant met with S&C. Because of Tournant's privilege claims, there are key facts about that meeting that support the Government's arguments in opposition to the defense motion, but that are unavailable to the prosecution team.

*First*, the purportedly privileged materials reveal that S&C informed Tournant from the outset that the June 3 meeting had two purposes: to prepare for an SEC deposition and to continue Allianz's own internal investigation. In his brief, Tournant repeatedly asserts that he was misled by S&C to induce his participation in that meeting, and was then blindsided when it turned out S&C was still conducting a factual investigation and subsequently revealed to the Government what Tournant said at the meeting. (*See, e.g.*, Def. Br. at 11-12). Tournant claims S&C lied to him outright—that the firm "falsely represented that the primary purpose of the meeting was to prepare him" to testify, when in reality the firm was surreptitiously "gathering evidence against him to be used to further Allianz's efforts to obtain cooperation credit." (*Id.* at 41). He relies on this narrative to support his claims that the firm had developed a conflict of interest before the June 3 meeting, and that its subsequent revelation of privileged communications, obtained by trickery, was therefore improper.

Those are serious allegations. But they are belied by materials submitted in support of Tournant's motion, over which Tournant is asserting privilege and which the prosecution team has not seen. S&C's notes from the June 3 interview indicate that at the very beginning of the meeting, an S&C attorney advised Tournant that "part of the purpose today is to get you ready for SEC testimony." But he immediately described an additional purpose of the meeting: "Then also from the company standpoint, what are the facts here and what arguments can we make and if there's a problem here. No one has prejudged anything. We want to get to the bottom of it." (Def. Ex. F at

1). Right from the start, S&C made clear to Tournant that it intended to help him prepare for a deposition but that it was also still investigating the facts and sought information for that investigation during the June 3 meeting.

*Second*, the purportedly privileged materials reveal that even before that introduction, this was no secret to Tournant or his individual counsel. In his brief, Tournant glosses over key facts—again contained in materials over which Tournant asserts privilege and which the prosecution team thus has not reviewed—showing that he knew S&C and Allianz were still investigating on June 3, and that they might elect to waive privilege and disclose anything he told them during the June 3 meeting. In a redacted footnote of his brief, Tournant acknowledges that two days *before* the June 3 meeting, S&C called Milbank to remind individual counsel that under the terms of Tournant's engagement letter, Allianz could unilaterally decide to waive privilege and disclose any statements Tournant made to S&C. And that same day, S&C forwarded Tournant's engagement letter to his individual counsel, so that there would be no doubt about its terms. (*See* Def. Br. at 12 n.5; Def. Ex. R at 2). Tournant has given no indication that he or his individual counsel protested, or that they disputed S&C's understanding of the engagement letter or the enforceability of this waiver provision. Instead, after receiving that clear warning, Tournant and his individual counsel went to the June 3 meeting fully aware that Allianz might elect to waive privilege over Tournant's statements in that meeting.

*Third*, contrary to the characterization of the June 3 meeting in Tournant's brief as an aggressive cross-examination meant to incriminate Tournant, S&C's notes reflect that much of the interview appeared non-confrontational, and the meeting only became contentious at the very end. Towards the end of the almost six-hour meeting, S&C began asking questions Tournant now characterizes as "aggressive" (Def. Br. at 13), and Tournant's individual counsel remarked that he "[a]ssume[d]" S&C had documents relating to the questions, and that that assumption was "why I'm allowing these questions to go on." (*Id.* (quoting Def. Ex. F at 46)). In S&C's writeup of the meeting, a series of notes immediately following that remark indicate that an S&C lawyer provided various documents "to Tournant and counsel," and after a few more questions, "Milbank requested and took a break to discuss with Tournant; they returned at 2:25 p.m." (Def. Ex. F at 47). The meeting ended just five minutes later. (*Id.* at 48). That series of events is consistent with both preparation for an SEC deposition and the continuation of a fact-gathering exercise, just as S&C informed Tournant would happen at the beginning of the meeting.

## II.    These Facts Further Support Denial of the Defense Motion

These facts offer further support for two arguments made in the prosecution team's brief.

*First*, the Government's prosecution team has argued that Tournant knowingly and voluntarily waived privilege, based on the clear written waiver Tournant signed (presumably with the benefit of advice from his individual counsel, to whom S&C's engagement letter was addressed) in November 17, 2020. (*See* Dkt. 61 at 21-23). But the facts supporting waiver are stronger than the prosecution team knows. Just two days before the June 3 meeting, S&C reminded Tournant, through individual counsel, that Allianz retained the right to unilaterally disclose information Tournant shared with S&C. And to drive the point home, S&C re-sent the engagement letter to Milbank that same day. After receiving those additional oral and written warnings, Tournant made the informed decision to attend the June 3 meeting and chose to answer S&C's

questions.[2] That series of events makes clear that Tournant fully understood and accepted the risk that S&C might disclose the contents of the June 3 meeting to a third party, including the Government, as a result of the waiver provision in S&C's retainer agreement.

*Second*, the prosecution team argues that there is no evidence that S&C had developed a conflict by the time of the June 3 meeting. (*See* Dkt. 61 at 23-24). Here, too, the facts are stronger than the prosecution team knows. If anything, the privileged materials support the inference that the conflict resulted from the June 3 meeting, and not from events preceding it. One of Tournant's arguments on this score is that the Court should infer a conflict based on what Tournant characterizes as lies by S&C: he argues that S&C's "lack of candor and deception" about the June 3 meeting "demonstrate that S&C was operating under a conflict of interest." (Def. Br. at 41). But that assertion is contradicted by what S&C actually told Tournant about the purpose of the meeting. Tournant was warned that the firm was still investigating—that while they had not "prejudged anything," they were still gathering facts to determine whether there was "a problem." (Def. Ex. F at 1).

Given S&C's apparent candor about the dual purposes of the meeting, it is difficult to understand the basis for Tournant's assertion that he was misled, and that lies supposedly told to him are evidence that a conflict existed. To the extent the purportedly privileged materials shed light on the development of a conflict, they tend to show that a conflict arose *because of* the June 3 meeting, when Tournant's responses to questions gave S&C reason to believe that he had engaged in wrongdoing, thereby making his interests diverge from those of Allianz. The privileged materials thus undermine Tournant's suggestion that S&C should have identified a conflict and terminated its representation of Tournant earlier.

***

In sum, the information over which Tournant is asserting privilege lends additional support to the prosecution team's opposition brief, and for the reasons above and in the prosecution team's brief, the Court should deny Tournant's motion to dismiss the indictment.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:    /s/
Derek Wikstrom / Lisa Korologos
Assistant United States Attorneys
(212) 637-1085 / 2406

Cc:    Defense Counsel (by email)

---

[2] These facts are also relevant to Tournant's related argument that the waiver in the November 2020 engagement letter is unenforceable "because lawyers are required to revisit the terms of advanced waivers as circumstances change." (Def. Br. at 42). That appears to be exactly what S&C did, just days before the meeting.